[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11433
Non-Argument Calendar
_____

D.C. Docket Nos. 0:11-cv-62406-KAM ; 0:06-13274-JKO


In re: KEVIN CHRISTOPHER GLEASON,

Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 15, 2012)

Before CARNES, BARKETT, and FAY, Circuit Judges.

PER CURIAM:

Kevin Gleason, an attorney who practices bankruptcy law in Florida,

appeals pro se a sanctions order that the bankruptcy court entered against him and

that the district court upheld on appeal.  The order suspended Gleason from

practice before the bankruptcy court for sixty days.  Gleason contends that (1) the sixty-day suspension violated his First Amendment right to free speech and his Fifth Amendment right to due process; (2) the bankruptcy court lacked the authority to conduct en banc disciplinary proceedings and to suspend a member of the district court bar; and (3) it was clear error to find that he engaged in an impermissible ex parte contact while his disciplinary proceedings were pending when he sent a bankruptcy judge a bottle of wine and a note suggesting that they resolve their differences "privately."  Gleason also argues that the bankruptcy court clearly erred by finding that he acted in bad faith and that it abused its discretion by suspending him from practicing before it for sixty days.

## I.

We review de novo the district court's and bankruptcy court's legal conclusions and review the findings of fact only for clear error.  In re Mroz, 65 F.3d 1567, 1572 (11th Cir. 1995).  We review the decision to impose sanctions for abuse of discretion.  See id. at 1571–72.  Under that standard, we must affirm unless we find that the bankruptcy court made a clear error of judgment or applied the wrong legal standard.  See Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1238 (11th Cir. 2007).  "'The application of an abuse-of-discretion review recognizes the range of possible conclusions the [bankruptcy court] may reach.'"

2

Norelus v. Denny's, Inc., 628 F.3d 1270, 1280 (11th Cir. 2010) (quoting United

States v. Frazier, 387 F.3d 1244, 1259 (11th Cir.2004) (en banc)).

## II.

Gleason contends his sixty-day suspension from practice violates his First

Amendment right to free speech.  He argues that the bankruptcy court should not

have disciplined him based on the "tone" of his submissions, which he describes

as "truthful responses to a string of unjustified abuses."[1]  He asserts that his First

Amendment rights supersede the rules that regulate attorney conduct.

---

[1]The tone of Gleason's response to the bankruptcy court's show cause order is illustrated by its opening and closing paragraphs:

> In your fourth published example of "Ready-Fire-Aim" against this attorney, it is obvious that you have not reviewed the record in this case which does not support the purported findings of fact.  It is further quite obvious that you do not believe that the same respect mandated to be shown to you should also be shown to me. Your conclusion that [my client's] attempt to exempt his commissions as the head of a household is not supported by law is belied by the language of the actual statute.  Your conduct in this case [h]as been without citation to any authority for the propositions that:  your jurisdiction is never ending and without geographic bounds; your unconditional releases are meaningless; and pronouncements of the United States Supreme Court are mere suggestions.

> *    *    *

> It is sad when a man of your intellectual ability cannot get it right when your own record does not support your half-baked findings.

Doc. 592 at 1, 4 (footnote omitted).  In a supplemental response, Gleason stated that he "delivered a nice bottle of wine to the Court's chambers, with a hand-written note, which read as follows, 'Dear Judge Olson, a Donnybrook ends when someone buys the first drink.  May we resolve our issues privately?'"  Doc. 614 at 7.

3

Gleason has identified no authority supporting his contention that the First Amendment shields from sanctions an attorney who files an inappropriate and unprofessional pleading and then contacts a presiding judge ex parte with an offer to share a bottle of wine and "privately" resolve their dispute. When an attorney files inappropriate and unprofessional documents, a court may impose sanctions based on its "inherent power to oversee attorneys practicing before it." Thomas v. Tenneco Packaging Co., 293 F.3d 1306, 1308 (11th Cir. 2002) (upholding a district court's decision to sanction an attorney who submitted documents containing personal attacks on opposing counsel).

In the present case, the bankruptcy court found that Gleason's written submissions to the court and sending a judge a bottle of wine with an offer to resolve their differences privately amounted to "sanctionable professional misconduct." In ordering sanctions, the court exercised its inherent authority to oversee an attorney practicing before it. Proper procedures for challenging rulings that an attorney believes are wrong do not include filing an inappropriate response to a show cause order and then compounding that problem by contacting the judge ex parte. If Gleason believed that the rulings in the underlying bankruptcy case were based on errors of fact or law, his proper procedure was an appeal. Under the circumstances of this case, the bankruptcy court did not violate Gleason's First

4

Amendment rights by sanctioning him.

### III.

Gleason also contends that the bankruptcy court violated his Fifth Amendment right to due process by holding an en banc hearing even though there are no rules that authorize that procedure and by suspending him from practice even though there is no "bankruptcy bar" to which lawyers are admitted.  He argues that the bankruptcy court failed to provide him with sufficient notice of his alleged violations, the procedures that the en banc court would follow at his disciplinary hearing, and the rules the court would apply.

A bankruptcy court is authorized to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of Title 11 of the United States Code, which governs bankruptcy proceedings.  11 U.S.C. § 105(a). The court may sua sponte take any action or make any determination "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  Id.  Under the bankruptcy court's local rules, a single judge has the authority to discipline an attorney, including the authority to suspend him from practice after providing notice and a hearing:

> Upon order to show cause entered by at least one judge, any attorney appearing before the court may, after 30 days' notice and hearing and for good cause shown, be suspended from practice before the

> court . . . or otherwise disciplined, by a judge whose order to show
> cause initiated the disciplinary proceedings.

Bankr. S.D. Fla. R. 2090-2(B)(1) (emphasis added). Under that rule, there is nothing to prevent the en banc bankruptcy court from disciplining an attorney who practices before it. Bankr. S.D. Fla. R. 2090-2(A) (providing that the rule should not "be construed as providing an exclusive procedure for the discipline of attorneys appearing before the court"). Section 105(a) and the bankruptcy court's local rules authorized it to conduct the disciplinary proceedings that led to Gleason's suspension and to suspend Gleason from practice before it for sixty days.

The bankruptcy code and the local rules, however, were not the only sources of authority for the bankruptcy court's actions; the court also invoked its inherent power to impose sanctions. See Mroz, 65 F.3d at 1575 ("[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct" (quotation marks omitted)). A federal court's inherent powers "include the power to control and discipline attorneys appearing before it," id., and to suspend attorneys who practice before it, see In re Snyder, 472 U.S. 634, 643, 105 S.Ct. 2874, 2880 (1985); see also In re Evergreen Sec., Ltd., 570 F.3d 1257, 1280 (11th Cir. 2009) (upholding the bankruptcy court's judgment imposing monetary

sanctions and suspending an attorney from practice before the bankruptcy court for five years).

An attorney subject to sanctions is entitled to due process, which includes "fair notice that [his] conduct may warrant sanctions and the reasons why," as well as the opportunity to respond. Mroz, 65 F.3d at 1575. He must be given the opportunity to justify his actions either orally or in writing. Id. at 1575–76. After that, a finding of bad faith is "the key to unlocking the court's inherent power" to impose sanctions. In re Porto, 645 F.3d 1294, 1304 (11th Cir. 2011).

Gleason received both notice and an opportunity to respond. Before his disciplinary hearing, the bankruptcy court issued several orders addressing his behavior. Those orders informed Gleason of the conduct for which the bankruptcy court intended to sanction him, explained why that conduct warranted sanctions, and set out the rules under which the conduct would be judged. The bankruptcy court then held an en banc disciplinary hearing, a procedure permitted under 11 U.S.C. § 105(a), the court's local rules, and its inherent powers. At that hearing, Gleason and his counsel had the opportunity to address the court. After the hearing, the bankruptcy court issued an order finding that Gleason's written responses to the court's show cause order and his attempt to contact a judge ex parte violated his professional responsibilities as an attorney and were

7

damaging to the court as an institution. The court concluded that Gleason had acted in bad faith and that sanctions were warranted. Gleason received all of the process he was due.

IV.

Gleason next contends that the bankruptcy court's finding of bad faith is clearly erroneous and that the court abused its discretion by imposing a sixty-day suspension, instead of a less severe sanction such as a reprimand. Before exercising its inherent power to impose sanctions, a court must make a finding of bad faith. Mroz, 65 F.3d at 1575. A finding of bad faith may be appropriate when counsel has acted "vexatiously, wantonly, or for oppressive reasons." Id. To support a finding of bad faith, the bankruptcy court should make specific findings about the party's conduct that warrants sanctions. In re Porto, 645 F.3d at 1304.

The bankruptcy court did not clearly err in determining that Gleason's filing of inappropriate and unprofessional responses to a show cause order and his attempt to contact a judge ex parte amounted to bad faith that warranted the imposition of sanctions. The en banc bankruptcy court's order demonstrates that it gave reasoned consideration to the gravity of Gleason's conduct and to the various aggravating and mitigating circumstances involved in this case. Accordingly, the bankruptcy court's decision to suspend Gleason from practice for sixty days,

8

which it determined to be "the minimal sanction necessary to preserve the

authority and integrity" of the court, does not constitute a misapplication of the

law or otherwise amount to an abuse of discretion.

**AFFIRMED.**